CORNING & NORTON *vs.* COLT & NOWLAND.

Where manufacturers in the country sent an order to merchants in the city for a quantity of plough castings, to be forwared on the *canal*, only a part of which were forwarded, and those by *land* carriage, by means whereof the expense of transportation was greatly increased, *it was held*, in an action for the price of the property forwarded, that the plaintiffs were not entitled to recover without shewing an *acceptance* of the goods by the defendants.

If the goods had actually come to the possession of the defendants, or if a bill specifying the quantity and description of the articles sent had actually been received by them, *it seems* they would have been held liable, unless they had given notice to the plaintiffs of their *refusal to accept* the goods, either on account of the deficiency in the quantity, or of the increased expense of transportation.

Where there is no evidence of *acceptance*, notice of refusal to accept is not necessary; and whether there has been an acceptance or not is a question for the jury.

THIS was an action of assumpsit tried at the Rensselaer circuit in June, 1829, before the Hon. WILLIAM A. DUER, one of the circuit judges.

On the 14th November, 1827, the defendants, residing at *Geneseo*, in the county of Livingston, sent an order to the plaintiffs at *Albany*, to forward to them a quantity of plough castings of various descriptions, if they could be sent by the canal that fall, on a credit of one year from January then next; the castings to be forwarded to Rochester, subject to the order of the defendants. The order was received on the 20th November, and on the 29th of the same month the nav-

igation on the *canal* having closed for the season, the plaintiffs forwarded the castings specified in the order except 100 plough shares of a particular description, mentioned in the order, by *land* to Utica, from whence they were forwarded to Rochester. The amount of the bill for the castings furnished being $277,05. On the 15th *January*, 1828, the defendants sent their note to the plaintiffs for $507, saying it was for the amount of the plaintiffs' *bills as rendered*, but whether the bill of 29th November, 1827, was referred to did not appear; and they requested the plaintiffs to inform them how many castings they had forwarded the preceding fall. On the 2d *February* the defendants wrote the plaintiffs that they had received two bills for castings, pointing out a difference in the items charged, and asking an explanation; that an account had been rendered to them for transportation of castings, amounting to $69,95, which they complained of as unreasonably high; and that they had been notified by Messrs. Allen & Chapin, a firm at Rochester, that a quantity of castings were there in store for them. In this letter the defendants say they cannot tell whether the plaintiffs had filled their order or not. The defendants produced a letter from the plaintiffs to them, dated 29th September, 1828, stating that they had on that day received a letter from Messrs. Allen & Chapin, informing them that a quantity of plough castings were in their store, forwarded by the plaintiffs the preceding winter directed to the defendants, which they would be under the necessity of selling for charges, unless payment was made; the plaintiffs then remind the defendants of a proposition they had made, which they had hoped had been accepted, viz. that inasmuch as they, the plaintiffs, had not adhered to the letter of their instructions, in forwarding the castings by *land*, that the defendants should share in the extra expense; remarking, however, that they were at liberty to decline paying any thing *extra* if they chose so to do. The plaintiffs then proceed to say, that as no answer had been received to their proposition, they had concluded that the defendants had received the castings, and that when the day of payment arrived, they would have been furnished with an account of extra charges; but that now it seemed

the defendants had left the casting with Messrs. Allen & Chapin, and were indifferent whether or not the whole were sold for transportation, supposing the loss would fall upon the plaintiffs; and in conclusion, apprise the defendants that they would look to them for payment of the whole bill, and if the business was not amicably arranged when the bill became due, the law must decide how far they were liable for the extra charges.

Previous to the production of the plaintiffs' letter, the plaintiffs having rested, the defendants moved for a nonsuit, on the ground that the plaintiffs not having furnished the entire quantity of castings ordered, and the portion forwarded not having been accepted by the defendants they were not liable; and further, that they were not obliged to receive the articles, subject to the additional charge of transportation incurred in consequence of the plaintiffs forwarding them by *land* instead of *water* conveyance. The motion for a nonsuit was denied by the judge, who ruled that the defendants were liable for the castings forwarded, unless they could shew *notice* to the plaintiffs that they refused to receive the property, on the ground of the deficiency in the quantity sent, or of the mode of transportation having been varied from the directions given; that they were liable to the plaintiffs, notwithstanding that they would have been obliged to pay an extra price for the transportation, and that such extra price might have been deducted on payment of the plaintiffs' bill, which it seemed the plaintiffs had offered. The plaintiffs' letter was then read in evidence, and the jury, under the charge of the judge, and the decisions by him made as above, found a verdict for the plaintiffs for $280,07. A motion was now made to set aside the verdict.

*G. C. Bronson*, (attorney-general) for defendants.

*B. F. Butler*, for the plaintiffs.

*By the Court*, SUTHERLAND, J. We are of opinion that a new trial ought to be granted in this case. The order of the defendants not having been strictly complied with by the plaintiffs, either as to the quantity of goods sent or the mode of transportation, it was incumbent upon them to shew an

acceptance of the goods by the defendants, before they could be held responsible. The order was for a specified quantity and description of castings. If the castings had been sent according to the order the contract would have been closed. There would have been a complete agreement; an *aggregatio mentium*, as it is expressed in *Bruce and Bruce* v. *Pearsons*, 3 *Johns. R.* 534, and the defendants would have been bound. But the order not having been complied with, there was no express contract between the parties, and no promise to pay for the goods can be implied, without evidence of an acceptance of them by the defendants. If it had clearly appeared that the goods came to the hands of the defendants, that would have been evidence of an acceptance, and would have bound them, unless they had shewn that they declined receiving them, and gave notice of such refusal to the plaintiffs.

This doctrine is fully established by the case of *Bruce and Bruce* v. *Pearson*, already referred to. Pearson, in that case, had ordered a bill of goods to be sent to him at Albany from New-York; a part only of the goods were sent, and at a credit different from that specified in the order. Some of the goods were lost, the vessel having been cast away on her voyage up the river. Pearson refused to receive the residue of the goods, and gave immediate notice to the plaintiffs that he did not consider them as his, as they had not sent *all* the goods ordered, nor on the terms proposed. The court held that he was not liable for the value of the goods; that he was not bound to accept a part instead of the whole; and until he assented to receive a part, he could not be said to have contracted to pay for a part, and that there could be no *implied assumpsit* to pay, as the goods sent never came to his hands.

The real question in this case then was, whether the castings sent had been accepted by the defendants? The judge decided, and so finally instructed the jury, that the defendants were liable, unless they proved that they gave notice to the plaintiffs that they declined accepting the goods on the ground of deficiency in the quantity. This would have been correct, if it had been shewn that the goods had actually come

to the possession of the defendants; but there was no such evidence; on the contrary it appeared that they were still at Rochester and never had been in the defendants' possession. We do not mean to say, that the actual receipt of the goods is the only evidence which could be given of their acceptance; if it had clearly appeared that a bill of the goods had been sent to and received by them, shewing the particular quantity and description sent, this would have been notice to the defendants that their order had not been complied with according to its terms, and would have made it incumbent upon them to give notice to the plaintiffs of their refusal to accept or they would have been liable. What we intend to decide is, that the plaintiffs were bound in the first instance to shew an acceptance of the goods by the defendants by competent and satisfactory evidence, and that whether there was an acceptance or not was a question of fact which should have been left to the jury. If the evidence as it now stands had been fairly submitted to the jury under proper instruction from the court, and they had found for the plaintiffs, we should not have disturbed the verdict; but the question of fact was substantially withheld from them, in a case certainly not free from doubt. A new trial must therefore be granted.