## BADGER *v.* GILMORE.

An express promise to pay part of a note discharged by proceedings in bankruptcy, revives the note *pro tanto.*

Evidence that the maker, when called upon to testify in a suit upon the note against another party, expressed himself unwilling to testify, declaring that he preferred to pay the note himself, and would pay it; at the same time saying, " a part of the note has been paid, but enough remains due upon it to pay you"—meaning the holder, who had purchased it for a less sum than appeared to be due upon it — is competent to be submitted to the jury as evidence that the maker expressly promised to pay so much of the amount due upon the note as would reïmburse the holder for the sum paid by him for it, and revives the note to that amount.

A debt, discharged by proceedings in bankruptcy, is not extinguished as by payment; but, while it continues under the operation of the discharge, is incapable of being enforced by a suit upon it. The debtor, by an express promise to pay, *waives* the benefit of the discharge, and the debt is thereby restored to its original condition of a legal liability.

A negotiable promissory note, while under the operation of such discharge, may be endorsed, and a new promise, made to the endorsee, may be given in evidence to sustain a declaration upon the note by a subsequent endorsee.

ASSUMPSIT upon a promissory note for $2000, dated Boston, June 9, 1842, signed John Leach & Co., payable to the order

of Boynton & Swasey in four months, and by them endorsed in blank. The writ is dated March 15, 1854. The defendant pleaded—

1. The general issue.

2. The statute of limitations.

3. A discharge in bankruptcy, granted June, 1843.

The plaintiff replied to the second plea, a new promise. To the third plea, that on the 28th of March, 1848, the defendant confirmed said promises, and then promised to pay the sums of money mentioned in the declaration.

On these replications issues were joined.

It appeared that at the date of the note the defendant was a member of the firm of John Leach & Co., which firm, and also the said firm of Boynton & Swasey, were then doing business in Boston.

On the 13th of December, 1842, the defendant applied by petition to the District Court of the United States for the District of Massachusetts, for the benefit of the bankrupt act, passed by Congress August 19, 1841, and that on the 14th day of June, 1843, he received his certificate of discharge. The plaintiff also proved, by certified copies from the record of the aforesaid district court, that Boynton, one of the members of the aforesaid firm of Boynton & Swasey, on the 14th day of June, 1843, proved the note in suit before said district court against the estate of the defendant in bankruptcy. It appeared, also, from the plaintiff's evidence, that about the 6th of February, 1846, one Stephen C. Badger bought the note in suit of said Boynton for $400—it being then agreed between them that if Badger should not recover more than $200 and costs, Boynton should pay him back $200 ; and that whatever said Badger should recover over $400 and costs, Boynton should receive one fourth part of it, and that Badger knew when he bought the note that the defendant and said Leach had been discharged in bankruptcy ; that Boynton had received a dividend on said note out of the defendant's estate in bankruptcy, and that Badger's sole object in buying the note was to recover the amount of it

from one Bard P. Paige, who, he supposed, was a silent partner in the firm of John Leach & Co. at its date.

It also appeared from the plaintiff's evidence, that in March, 1846, said Badger brought an action on said note against said Paige, in the name of Edwin Edgerton, which action was dismissed on motion of said Badger, March 29, 1849. In February, 1854, said Badger transferred the note in suit to his brother, the plaintiff, in consideration of an agreement on the part of the plaintiff to convey to said Stephen C. Badger one half of a patent right for which he had applied, but which patent was not granted until some months after the commencement of this action. The plaintiff offered in evidence the contract between said Boynton and said Stephen C. Badger for the sale of said note, to which the defendant objected, but the court admitted the evidence. To prove a new promise, the plaintiff called said Stephen C. Badger, who testified as follows:

"The last of March, 1848, I had a conversation at my office with Gilmore. My son, Benjamin E. Badger, was present. I think it was the 28th of March. I think I had the note at that time. I had summoned defendant to appear at court on the 29th of March, on the trial of Edgerton against Bard P. Paige. He was sued as a member of the firm of John Leach & Co. Gilmore declined to be a witness. He did not want to be put upon the stand. I told him it was important I should have his testimony; — that I could not go on without his testimony. He declined positively. He said, if I could not get it without his being a witness, he would settle it himself. He said, if I could not get it out of Paige he would pay it himself. I told him I could not go on without his testimony. Then he said, 'I'll pay it.' He then said a part of it had been paid. I said to him, 'How is that?' He said it was a money transaction with Boynton & Swasey; — that he had had a good deal of business with them, and said this was honorary paper, and no person should suffer by him on his honorary paper. I asked him how much had been paid on it. He said he could not tell, but there was enough due on the note to pay me. I had before disclosed to

him that I owned the note. The consideration for the new promise on the part of Gilmore, as I understand it, was that he should not be called as a witness in the Edgerton suit."

The plaintiff also called Benjamin E. Badger, who testified that he was son of Stephen C. Badger; that in March, 1848, he was present at a conversation between his father and Gilmore, at his father's office, with regard to a suit against Paige. Gilmore said he was unwilling to testify with regard to the case; said the debt was a fair debt; an honorable debt; said there was then due on it what his (witness's) father had paid on it; that his father told Gilmore he was very anxious he should testify, and Gilmore said he would not; — rather than testify he would pay the note himself; that his father said he could not get it unless he (Gilmore) did testify. Gilmore said — ' I'll pay it, then.' "

At the close of the plaintiff's evidence the counsel for the defendant asked the court to rule that the proof did not sustain the declaration, and that the action could not be maintained; but the court declined so to rule. The defendant's counsel then requested the court to charge the jury that a new promise to pay a debt after a discharge in bankruptcy is not negotiable, and this action cannot be maintained except upon proof of a new promise to the plaintiff; that, if a new promise was not made to plaintiff, and was a promise to pay part of the note only, and that conditionally, and not in consideration of the moral obligation to pay the debt, but upon an agreement to relieve Gilmore as a witness, such new promise is not negotiable, and this action cannot be maintained; — that, if the note had not been paid, but Gilmore had been discharged in bankruptcy, and afterward made a new promise to pay it solely in consideration that he should not be called to testify in the suit, Edgerton *v.* Paige, then the new promise was not negotiable; the proof does not support the declaration, and the action cannot be maintained.

But the court declined so to charge, but did instruct the jury, that if the defendant, after his discharge in bankruptcy, promised to pay the note or any part of it to Stephen C. Badger, he then being the owner of it, such promise renewed the note, and

the plaintiff could maintain this action in his own name, and was entitled to recover the whole, or such part of the note as the jury might find the defendant promised to pay.

The jury returned a verdict for the plaintiff for $400. The defendant moved that the verdict be set aside and a new trial granted, for the aforesaid alleged erroneous rulings, instructions and refusals of the court.

*Bellows,* for the plaintiff.

I. The contract of sale of the note was admissible. It was necessary to show in whom was the property and also the amount paid for it, the promise of the defendant being to pay what Badger paid. It also bore upon the testimony of Boynton, who made the sale and had previously testified for the defendant.

II. The evidence tended to prove a payment of part of the note, leaving as much unpaid as Badger paid for the note, and a promise to pay that amount. As to that part, the debt was revived by the new promise, and the note was revived in all its parts, including its negotiability. *Underwood* v. *Eastman & a.,* Grafton Co., August, 1847, cited in *Stark* v. *Stinson,* 3 Foster 260 ; *Way* v. *Sperry,* 6 Cush. 238, and cases cited.

In England the debt is treated as revived and the original contract declared on. 1 Chit. Plead. 54, and note ; *Williams* v. *Dyde & a.,* 5 Peake 68 ; Chit. on Bills and Notes 738-9 ; and it is held that the debt is still binding in conscience. In accordance with the English cases in *Shippey* v. *Henderson,* 14 Johns. 178.

In *Little* v. *Blunt,* 9 Pick. 488, where the statute of limitation was pleaded, it was held that the new promise restored the negotiability of the note declared on, so that an after endorsee might sue. This is not affected by proof of the debt in bankruptcy.

The provisions in the bankrupt law, sec. 5, were intended to reach those claims which otherwise would not be discharged by the decree, such as claims which are fiduciary in their character.

The English bankrupt law provides that the " *bankrupt is dis-*

*charged from all debts.*" Our law is substantially the same, and both in England and this country it is held that the moral obligation still remains; and in this respect it is like the case of a debt, barred by the statute of limitations, where it is held that a new promise is a waiver of the statutory bar. *Titus* v. *Ash*, 4 Foster 330.

III. If the defendant was induced to promise to pay the note to avoid being called to testify, still his promise revived the note. It was a promise to pay the note ; not a sum of money equal to it, but the note itself, so that, on such payment, the note would be fully discharged, morally as well as in law, and it would not again furnish a consideration for a new promise.

The jury then could not have found on the evidence that the not calling the defendant as a witness was the sole consideration, and, therefore, there was no occasion to charge the jury as requested.

The witnesses state the language used by Gilmore amounting to an unconditional promise to pay ; choosing to pay rather than to testify ; and one witness states that he understood the consideration of the promise to be that the defendant was not to be called as a witness.

But it appears clearly that this was not the sole consideration, for the payment would discharge the moral obligation. But whatever was the consideration, the promise was to pay the note, and it was thereby revived, just as if he had been sued and he promised not to avoid the suit.

IV. There was no evidence of a conditional promise, and so no call for a charge on that point. If it were otherwise the suit might be on the original contract, and it would be negotiable. *Way* v. *Sperry*, 6 Cush. 228.

*Bartlett*, for the defendant.

1. The evidence of the contract between S. C. Badger and Boynton was not material to any issue on trial, and should have been rejected.

2. A discharge under the bankrupt act is a discharge of the

*debt* and not merely of the person, as by an insolvent law, or a mere bar to the remedy, like the statute of limitations.   U. S. Bankrupt Act, 1841, sec. 4, (Phil. Ed.) pp. 29 and 7, *n ; Baker* v. *Wheaton,* 5 Mass. 510 ; *Sturges* v. *Crowningshield,* 4 Wheat. 122 ; *Hicks* v. *Hotchkiss,* 7 Johns. Ch. 299 ; 3 Story Const. 252–6 ; *Towns* v. *Smith,* 1 Wood & M. 120, 132 ; Angell Lim. 5.

After such a discharge a note is no longer negotiable.   There is nothing to assign, for the note is "*functus officio,*" and the promise is vacated, or, in the language of the act, the certificate is a full and complete discharge of the debt or contract.   *Baker* v. *Wheaton,* 5 Mass. 510 ; *Depuy* v. *Swart,* 3 Wend. 135 ; *Walbridge* v. *Harroon,* 18 Vt. 448 ; *Moore* v. *Viele,* 4 Wend. 420 ; *White* v. *Cushing,* 31 Me. 558 ; *Wardwell* v. *Foster,* 30 Me. 267.   So, by the express provisions of the act, the note having been proved against the defendant in bankruptcy cannot be the subject of any suit against him.   Bankrupt Act, sec. 5, (Phil. Ed.) p. 34.

Though the " moral obligation" of a debt discharged by the act is a sufficient consideration to sustain a new promise, it is the new promise that is the gist of the action.   *Titus* v. *Ash,* 4 Foster 330 ; *Lathrop* v. *King,* 8 Cush. 383 ; *Earnest* v. *Park,* 4 Rawle 452 ; *Kelly* v. *Pike,* 5 Cush. 486.

And the new promise, not being within the statute of Anne, is not negotiable.   *Sims* v. *Redcliffe,* 3 Pick. 287 ; *Reigne* v. *Deporte,* Dudley 118.

After confirmation in certain cases, an infant's contract may be declared on, but this is where it is not void but voidable. Story Cont., secs. 58, 67, 69 ; 2 Saund. 137, *f, n ; Moore* v. *Wilson,* 11 M. & W. 256.

By an anomaly in pleading, after a new promise the original demand, barred by the statute of limitations, may be declared on in assumpsit.   Such pleading is grounded on the exploded notions of the statute, and is only tolerated because of long usage.   Angell on Lim. 315 ; *Kelly* v. *Pike,* 5 Cush. 486.   But courts will not extend this loose doctrine.   *Downer* v. *Shaw,* 8 Foster 152 ; *Young* v. *Mackall,* 3 Md. Ch. 198.

3. If the new promise could be assigned, it should have been declared on. *Graham* y. *Hunt,* 8 B. Mon. 7; *Kelly* v. *Pike,* 5 Cush. 486; *Carson* v. *Osborne,* 10 B. Mon. 135; *Field's Case,* 2 Rawle 351.

4. Upon the evidence the jury might have found that the new promise was in consideration of Badger's agreement to relieve the defendant from testifying; and they should have been instructed that such a contract would not support the declaration. *Moore* v. *Ross,* 7 N. H. 533; *Smith* v. *Wheeler,* 9 Foster 342; *DeForest* v. *Frory,* 6 Cow. 151.

5. So they might have found the new promise conditional, and they did find it a promise to pay part only of the note. *Smith* v. *Eastman,* 3 Cush. 355; *Farly* v. *Kustenbaden,* 3 Rich. 418; *Lounsdale* v. *Brown,* 3 Wash. 404; *Brown* v. *Jones,* 1 Rich. 210, 5; *Shaw* v. *Newell,* 1 R. I. 488; *Lang* v. *Makee,* 4 C. & P. 463, *n; Carter* v. *Hamilton,* 11 Barb. 147; *Campbell* v. *Sewell,* 1 Chit. 609; *Mathews* v. *Redwine,* 23 Miss. 223; 2 Saunders 137, *f, n.*

6. If the promise were in consideration that the defendant should not be called as a witness, or were conditional, or were to pay part only of the debt, it is not negotiable. *Roberts* v. *Peake,* 1 Burr. 326; *Kelley* v. *Hemmingway,* 13 Ill. 604; Bayly on Bills 1, 7, 8; Story Prom. Notes, sec. 1.

SAWYER, J.* The defendant was discharged from liability upon the note declared on by the proceedings in bankruptcy. That liability, however, was one which could be revived by an express promise to pay the note, made subsequent to the discharge, and it may be revived in part by such express promise to pay a part of the debt. The note was transferred by the payees, Boynton & Swasey, to S. C. Badger, subsequently to the discharge in bankruptcy, and by S. C. Badger to the plaintiff, subsequently to the new promise relied on to revive it. Waiving, for the present, the consideration of the questions arising upon these facts, and assuming that a new promise to S. C. Badger, while he was

* PERLEY, C. J., did not sit.

the holder, would enure to the benefit of the plaintiff, the evidence introduced by the plaintiff of the declarations made by the defendant to S. C. Badger, that he would pay the note, was clearly competent to be submitted to a jury as evidence of such express promise. But considered in connection with the accompanying declarations, that a part of the note had been paid, and that there was enough due on it to pay the witness, S. C. Badger, it might properly be considered by the jury under the circumstances as a promise to pay only so much as would be sufficient to reïmburse to S. C. Badger the amount he had paid for it. In this view it was material for the plaintiff to show what the agreement was between S. C. Badger and Boynton at the time of the purchase of the note by Badger ; and the evidence upon that point, introduced by the plaintiff and objected to by the defendant, was competent.

The question then arises, whether, when the new promise was made to S. C. Badger, the note then in his hands, in virtue of the transfer from Boyton & Swasey, was capable of being revived by the new promise, so as to give to it a legal existence as a subsisting promissory note, with all its qualities as such, negotiability among the rest; or, assuming that S. C. Badger may be regarded at that time so far the holder of the note that there was a moral obligation on the defendant to pay it to him, which would constitute a good consideration for the new promise to S. C. Badger himself, whether, nevertheless, that new promise is of a character to be enforced by him alone, not having the quality of negotiability, so as to give a right of action upon the note to this plaintiff as the assignee of Badger.

If no right of action exists in the plaintiff, it must be because the effect of the proceedings in bankruptcy is not merely to bar a recovery against the defendant, but to extinguish the debt, in the same manner as it would be extinguished by payment, leaving nothing of its original vitality in the note to be the subject of transfer from Boynton & Swasey to S. C. Badger, and nothing to be transferred by him to the plaintiff; while, on the other hand, if the operation of the bankrupt discharge is to

create a bar to a recovery, by subjecting the debt to a disability which the debtor may remove at his pleasure, and, by removing, restore the debt to its original condition as a legal obligation, it must be because, notwithstanding the discharge, something of its original vitality — a *scintilla juris* — still attaches to the debt, which, by the transfer in this case, passed to S. C. Badger, and by the promise to him is raised to the condition of a legal liability, capable of being enforced by a suit.

In the case of debts barred by the statute of limitations, and taken out of the statute bar by a new promise, it is well settled that they are revived, with all their qualities and incidents, as though the bar had never existed.

Thus in *Little* v. *Blunt*, 9 Pick. 488, it was held that a new promise to the holder of a note, barred by the statute of limitations, enures to the benefit of a subsequent endorsee, and the same was held again in 16 Pick. 359.

In *Whitney* v. *Badger*, 4 Pick. 110, *Parker*, Ch. J., says an original promise must be made to the party or to some one authorized to receive it, but an acknowledgement to take the case out of the statute of limitations is an independent fact, which, even when made to a stranger, and in the absence of the plaintiff, defeats the operation of the statute.

In *Dean* v. *Hewitt*, 5 Wend. 256, it was decided that an action may be maintained by the endorsee of a promissory note, when the statute of limitations has attached, on proof of a new promise to the payee ; and the doctrine is reäffirmed in *Pinkerton* v. *Bailey*, 8 Wend. 600, and in *Saulden* v. *Van Rensallaer*, 9 Wend. 293. *Baxter* v. *Penniman*, 8 Mass. 133, was assumpsit on a note signed by the defendant, payable to the plaintiff's intestate, to which the statute of limitations was pleaded, and a replication of a new promise to the administrator. *Parsons*, Ch. J., says, when the parties are living, an admission of a promise or contract, undischarged within six years before action brought, takes it out of the statute of limitations. For the same reason, such an admission made by or to an executor or administrator, is considered as having the same effect ; and in accordance with this view, in *Emerson* v. *Thompson*, 16 Mass. 429, it was de-

cided that a new promise by an administrator within six years takes the case out of the statute of limitations, as well in an action against an administrator *de bonis non* as against the original administrator.

In our own courts the same doctrine has uniformly been held. In *Buswell*, admr., v. *Roby*, 3 N. H. 467, the new promise was to the administrator upon a note given to the intestate. *Richardson*, Ch. J., says, we are aware that it has long been settled in England that when an administrator declares upon a promise to his intestate, the declaration cannot be supported by evidence of a promise to the administrator after his decease. But in this State and in Massachusetts it has always been held otherwise. *Hale* v. *Roberts*, admr., cited in the case of *Buswell* v. *Roby*, and decided in Strafford county, September term, 1820, was upon a note to the plaintiff, signed by the defendant's intestate, and admissions by the administrator were held to be competent to support the replication of a new promise to the intestate. So, too, an original absolute promise, barred by the statute of limitations, is revived by a conditional promise, upon proof of the fulfillment of the condition. And where such conditional promise is made after the decease of the creditor and while there was no administrator upon his estate, it was held that the debt is revived upon proof of the happening of the condition, in a suit by a subsequently appointed administrator, and that in such case the declaration may proceed upon the original undertaking without averring the new conditional promise. *Betton* v. *Cutts*, 11 N. H. 170 ; *Atwood* v. *Coburn*, 4 N. H. 316.

In *Isley* v. *Jewett*, 3 Met. 439, it was decided that the new promise removes the statute bar merely, but does not create a new and substantive cause of action, which can be the basis of the judgment, but that the judgment must be considered as rendered upon the old contract.

In England the course in all cases, except in actions by executors and administrators, is to declare upon the original cause of action. *Leaper* v. *Tatton*, 16 East 420.

In the case of a negotiable promissory note, given by an infant

and ratified on coming of age by a promise to the payee, it may be negotiated afterwards by the payee, and a suit maintained upon it by the endorsee in his own name.  *Reed* v. *Batchelder*, 1 Met. 559.

In all these cases the party proceeds in the suit, not upon the new promise, but upon the original security as the substantive cause of action.

The exemption from liability upon the original demand, which the limitation act, or the legal principle or rule for the protection of the minor interposes, is considered as removed by the new promise, the benefit of the exemption being thereby waived by the party for whom the benefit was intended ; and the debt becomes, by this consent of the debtor, a valid legal obligation, capable of being enforced by a suit upon it, precisely as if the exemption had never been interposed by the law.

And we think there is no sound distinction in this respect between these cases and that of a debt discharged by proceedings in bankruptcy, or under an insolvent law, and revived by a new promise.   That for certain purposes and in some of their aspects, there is a well founded distinction between the two classes of cases, is not to be questioned.   Thus the statute bar under a limitation act may be held to affect the remedy only so as not to fall within the constitutional prohibition against enactments impairing the obligation of contracts ; while a bankrupt law may be considered in this respect as going beyond the remedy, and discharging the debt.   So, too, when the debt is transferred to a foreign jurisdiction, the discharge granted in certain cases under the *lex loci* accompanies it, while the statute bar is limited to the boundaries of the domestic jurisdiction.   So, too, a distinction obtains between the cases of demands barred by the statute of limitations on the one hand, and those discharged in bankruptcy, or voidable on account of infancy, on the other, in reference to the nature of the promise required to remove the exemption from liability ; in the latter an express promise being necessary, while in the former an acknowledgement from which a promise may be inferred is sufficient.   But whatever distinctions in other

respects may exist among them, there is none of a substantial character in reference to the effect upon them of a promise sufficient in law to remove the disability under which they are placed, as debts incapable of being enforced until that disability is removed by the new promise. That effect is in all the cases to give them vitality as legal obligations, and to do it in precisely the same mode, namely, by removing the bar, discharge, or disability, by whatever term it may be designated, which the statute provision or legal rule has applied for the time, and which will continue until removed by the new promise. They all stand alike upon the ground of debts which *are not* of legal obligation, but which may be made so by the act of the debtor in promising to pay them; amounting to a waiver of the benefit conferred by the law in respect to them; namely, exemption from legal liability for the debt.

To sustain this view it is unnecessary to deny that the effect of the bankrupt certificate is to discharge the debt as a legal liability. It is only necessary to deny that it pays it. By payment the debt is dissolved and utterly extinguished. It can never be resuscitated as the same debt. Any arrangement by which such a result is apparently produced, is the creation of a new debt. But there is no inconsistency in holding that the debt is discharged as a legal obligation by operation of the bankrupt certificate, and at the same time capable of being restored to its original validity upon being taken out of the operation of the discharge, by a new promise. That the debt is not entirely extinguished by the discharge, conclusively appears from the fact that in all courts, even those in which the doctrine has been most studiously maintained that the bankrupt proceedings discharged the debt, the suit, nevertheless, in case of a new promise, proceeds upon the original demand; or if the new promise is so qualified and limited as to render it necessary to declare upon that, then it must proceed upon it as supported by the consideration which the original demand furnishes. The bankrupt or insolvent law may declare the debt discharged, and it is so in the sense that it is to be treated as discharged at the debtor's

election, but not in the sense that the obligation is dissolved as by payment. That remains unbroken, though deprived of its validity as a legal obligation by operation of the discharge, until taken out of its operation by the new promise. And it is immaterial whether the view be taken that the legal liability is renewed because the debtor is again made directly liable for the original debt, or a new legal liability is incurred because he has promised to pay the old debt, and that is a sufficient consideration for such promise. In either case the plaintiff must prove the original indebtedness, and the liability at the time of suit brought; and if that liability arise from the new promise, it is just such a liability as the law implies from the old consideration, and hence the new promise accords with the old. 1 Smith's Lead. Cases 621, 4th Am. Ed., note to *Whitcomb* v. *Whiting.* The new promise may be qualified and limited, so as to fall short of the original liability; as, to pay in instalments, or some other particular mode not contemplated in the original contract; or it may be conditional, as to pay, if ever able, or the like, but it cannot exceed the original promise, nor will the original liability constitute a consideration to do another or collateral thing. *Reeves* v. *Hearne,* 1 Meeson & Welsly, 323.

In *Earle* v. *Oliver,* 2 Exchequer 89, *Parke,* B., says, "Promises to pay such debts simply," that is, debts barred by statute of limitations or discharged in bankruptcy, " or to pay by instalments, or when the party is able, are all equally supported by the past consideration of the original indebtedness; and, when the debts have become payable *instanter,* may be given in evidence under the ordinary declaration in *indeb. ass.* But it does not follow, though a promise revives the debt in such cases, that any of the debts will be a sufficient consideration to support a promise to do a collateral thing, as to supply goods or perform work and labor. In such a case it is but an accord unexecuted, and no action will lie for not executing it."

In *Underwood* v. *Eastman,* cited for the plaintiff, which was decided in Grafton county, July term, 1847, the new promise was made by the defendant after his discharge in bankruptcy;

the note being in the hands of the attorney of the payee for collection, and the new promise being made to him. The action was brought upon it for the benefit of the payee in the name of a nominal endorsee, and it was decided that the new promise took the debt out of the operation of the discharge; that thereby the debt was revived, and with it the note as the evidence of the debt, with all its former properties as a negotiable promissory note, and that the action might, therefore, be maintained in the name of the endorsee.

We have been furnished with the opinion of the court, as delivered by *Parker*, Ch. J., in that case, and his reasoning fully sustains the views here presented. The reasoning of the same learned judge in *Betton* v. *Cutts*, 11 N. H. 179, points directly to the same conclusions.

The decisions in New-York, Maine and Vermont, which establish the contrary doctrine as the law of those States, proceed entirely upon the ground of the distinction between the cases of debts barred by the statute of limitations, and those discharged under bankrupt or insolvent laws. The leading case upon this point, and the one upon the authority of which the subsequent cases in New-York and the decisions in Maine and Vermont, mainly depend, is *Depuy* v. *Swart*, 3 Wend. 135; and in that case the ground of the decision, as stated by the court, is, that by operation of the discharge the note is *functus officio*, and the debt extinguished as though paid, while the statute bar under a limitation act affects the remedy only. The soundness of the distinction in its application to the cases of debts barred or discharged and revived by a new promise, has been questioned in the courts of New-York by several of their ablest judges. Thus in *Saulden* v. *Van Rensallaer*, 9 Wend. 293, *Nelson*, J., in delivering the opinion of the court says, that there is, under the decisions of their courts, a well settled distinction between the bar by the statute of limitations and a bankrupt discharge; the former operating only on the remedy, and the latter impairing the contract; and at the same time he admits there may be great difficulty in maintaining the distinction in reference to the revival of

debts under them by a new promise, upon any sound and consistent reasoning.

In *Shippy* v. *Henderson*, 14 Johns. 178, in which the point decided was, that where a debt was discharged and revived by a new promise, the plaintiff might declare upon the original cause of action without noticing the subsequent promise, *Thompson*, J., says, " I see no reason why this case should differ from that of infancy, or that where the action is barred by the statute of limitations, and revived by a new promise." And in *Sands* v. *Gelton*, 15 Johns. 511, *Spencer*, J., says, " I never could see any difference, as regards the revival of a debt by a new promise, between one barred by the statue of limitations, and one from which the debtor has been discharged under the bankrupt or insolvent laws. The remedy is equally gone in both cases. There is no substantial difference between them, and both rest on the same principle with a debt contracted by an infant not for necessaries."

And the distinction upon which the decisions in New York, followed by the cases in Maine and Vermont, are made to rest, doubted as it is by some of the ablest judges of the court which lead the way in establishing it, is practically repudiated in that court and all others, both American and English, by permitting the promisee to declare upon the original contract, as one revived and restored to its former condition by the new promise.

In Massachusetts the decisions upon the subject have maintained consistent ground. The early case of *Maxim* v. *Morse*, 8 Mass. 127, decided in 1811, was an action of debt on a judgment of the court of common pleas. Plea, discharged in bankruptcy, under the bankrupt act of Congress of 4th of April, 1800. Replication, that the defendant had waived and given up all advantage from that discharge, by a subsequent promise to pay the judgment. Rejoinder, no such promise, and issue thereon. The verdict found that the defendant did promise, as set forth in the replication. The defendant moved in arrest of judgment that the action was misconceived; that it should have been assumpsit upon the new promise to pay the judgment, and not debt on the

judgment. In support of the motion, it was urged that the debt was discharged and extinguished by the bankruptcy; that the replication was inconsistent with and a departure from the declaration, and that the finding was upon an immaterial issue, being an absurd and insufficient finding in an action of debt. But the court held that the issue was material; the pleadings very similar to those which frequently arise under the statute of limitations; that the defendant pleaded what was a legal bar to the plaintiff's demand. The plaintiff replied other matter, which showed the defendant bound in law to pay; and this being found for the plaintiff, there was no reason why judgment should not be rendered on the verdict.

In *Way* v. *Sperry*, 6 Cush. 238, the question now under consideration was directly presented. That was assumpsit on notes payable to a third person, and by him endorsed to the plaintiff on the day of the commencement of the suit. The defence set up was a discharge in bankruptcy, and the answer of the plaintiff to this defence was, a new promise subsequent to the discharge, but before the endorsement made to the payee. In delivering the opinion of the court, *Metcalf*, J., pronounces the grounds of decision in the cases cited from the New-York, Maine and Vermont Reports, as unsatisfactory and inconsistent, and says that the original debt is not destroyed by a discharge in bankruptcy, but is still so far an existing debt that it may constitute a sufficient consideration for the new promise, and may, therefore, be revived as a legal liability by a waiver of the defence which the discharge furnishes.

The promise of a debtor, then, to pay a debt, a legal recovery upon which is thus barred, whether it is by a statute of limitations, or of bankruptcy, or by the legal maxim that an infant's contracts, not for necessaries, are void at his election, though usually called a new promise, is rather to be considered in the light of a waiver of the defence which the law furnishes for the benefit of the party so held discharged. In pleading it is sufficient to count on the original demand, and when the bar, discharge, or defence of infancy is interposed in the plea, then to

reply the new promise, and the evidence offered under that replication is no variance between the declaration and the proof; because, whether the defendant is held liable by reason of the original undertaking, as an indebtedness revived, or by reason of his subsequent agreement, is immaterial, as the plaintiff must prove both the original undertaking and the existing liability. And if it is to be considered that the liability arises from the new promise, it is precisely the liability which the law implies from the original consideration.

It is true, that the bankrupt act explicitly declares that no action shall be brought upon demands discharged; but if this is to be held to refer to all demands provable under the act, still the language used is no more explicit and direct than that of the statute of limitations, which declares that personal actions shall be brought within six years after the cause of action accrued, and not afterwards. In both cases the condition must be understood to be implied that the debtor has not waived the defence which the statute gives him.

The conclusions, then, to which we arrive are that the promissory note declared on was not destroyed by the discharge, but still subsisted as a promissory note, capable of endorsement and transfer; though divested of its character of a legal obligation while under the operation of the discharge, and therefore, when endorsed to S. C. Badger, taken by him subject to that disability; that upon the promise made to S. C. Badger, and which, under the instructions given to the jury, has been found by them to have been a promise to pay part of the note, it was revived, *pro tanto*, as a subsisting legal obligation, and with all its properties and qualities as a negotiable promissory note; that the endorsement to the plaintiff gave him the property in the note and a right of action thereon, as though the discharge had never become operative as to that part of the debt due upon the note to which the new promise related.

Upon these views no other questions arise in the case. Whether the new promise was made upon the consideration that the defendant should be relieved from testifying, or upon any other consid-

eration, or whether it was made voluntarily without any other inducement or consideration than such as is to be found in the original indebtedness, are entirely immaterial. If the new promise is regarded merely as a waiver of the defence under the discharge, it is none the less or more a waiver because it was made upon this or that consideration, or without any consideration other than the indebtedness itself. The instructions given to the jury were correct, and were all that the case required, and consequently there must be *Judgment on the verdict.*