BALL ELECTRIC LIGHT CO. *v.* SANDERSON BROS. STEEL CO.

(*Supreme Court, General Term, Fourth Department.   April, 1891.*)

PRACTICE IN CIVIL CASES—NONSUIT.

> Plaintiff agreed to put an electric light plant in defendant's mill and office, payment not to be required until after 90 days of successful operation.   About a month after the plant was put in defendant wrote plaintiff that the light worked well except the incandescent lights in the office.   In reply to plaintiff's request for a settlement defendant wrote that the 90 days had not expired; that the office lights were "a total failure;" but "if the arc lights work in the mill for the next 30 days as well as they have done, we will waive the trouble of incandescent lighting in the offices."   Afterwards defendant stated that the lighting was not satisfactory, and refused to allow plaintiff to correct it.   *Held*, that the case should have been submitted to the jury as to whether defendant accepted the lights by continuing to use them, and it was error to grant a nonsuit.

Appeal from circuit court, Onondaga county.

Action by the Ball Electric Light Company against the Sanderson Bros. Steel Company, to recover the price of an electric light plant put in the defendant's works by the plaintiff.   In defense the defendant alleged that the plant failed to operate successfully for 90 days, and to light its works to its satisfaction, which were conditions precedent to plaintiff's right to receive payment.   Plaintiff was nonsuited, and appeals.

Argued before HARDIN, P. J., and MARTIN and MERWIN, JJ.

*Charles E. Ide*, for appellant.   *E. Nottingham*, for respondent.

MERWIN, J.   The main question upon this appeal is whether the case should have been submitted to the jury.   There is no particular dispute as to the

form of the contract between the parties. On the 2d June, 1887, the defendant wrote the plaintiff, offering to "install a 30-light apparatus, you furnishing 15 horse-power at the pulley of the dynamo, for the sum of $1,985; or we will install a 25-light apparatus for the sum of $1,725. With either of these we will also install the necessary few incandescent lights required for your office without further charge, the entire installation being complete in every particular. Payment will not be required until after sixty days of successful operation." On the 3d June, 1887, the defendant in reply wrote the plaintiff that, in addition to the terms offered, it should require "that the lighting should be entirely to our satisfaction in every particular before payment is made, and that payment shall not be required until after 90 days of successful operation; also that, in case the result should not be satisfactory to us, that the whole plant shall be taken out, free of charge or cost whatever to ourselves." The plaintiff modified its offer in accordance with the requirement of the defendant, and on the 16th June, 1887, the defendant wrote the plaintiff that the terms and conditions as amended were satisfactory, thus completing the contract. In this last letter the defendant suggests that the plaintiff's representative should come up, and again look over the ground, and see exactly what is wanted, "and; as we only stipulate that the lighting shall be satisfactory, we would leave the decision as to what lights and what kind of a machine are necessary entirely to him, so that in case of any failure the fault cannot possibly rest with us." Thereupon the plaintiff proceeded to put in the plant. While it was being done the defendant suggests that it will be necessary to have some double lamps. This the plaintiff advises against, but says that, if the defendant prefers to have them, it will furnish them at a certain price extra. The defendant, on the 1st July, replies that it considers it will be absolutely necessary to have some, but before deciding will wait to see how the single lamps work. On the 28th July the defendant writes "that the electric light seems to be working well so far, with the exception of the incandescent lights in the offices. But before we can accept it we shall have to have several double lights put in in place of the single lights, as we have already written you, and then see how those work. We would like 17 of these double lights, which your man could put up when he comes next time. We shall be ready for him in about three weeks." To this the plaintiff replied on the 29th July that the request would be complied with, and asking "two or three days' notice when you will require our man, who will make all the lights operate to your satisfaction." The double lights were put in about the 22d August. On the 31st August the defendant notifies plaintiff of some trouble with sparks on the field-magnet, and the plaintiff sends a man to remedy it. On the 11th October the plaintiff asks for payment, the account having been previously sent, and again on the 17th October it calls defendant's attention to the account, and says that, unless they hear from them by the 20th inst., they will draw at sight for the amount. On the 19th the defendant writes that "it is not three months since the lighting was completed; and again, it is not satisfactory, nor is the amount you demand correct, as we have already told you. The arc lights burn fairly well in the mill, but the office lights are a total failure." They refer specifically to some items of the account, and say: "We inclose statement showing correct amount we shall owe you." The letter closes as follows: "If the arc lights work in the mill for the next thirty days as well as they have done, we will waive the trouble of incandescent lighting in the offices, as we have no confidence in the plan anyway, providing you make the requisite concession for the estimated cost of putting in the incandescent lights, and will then settle the account for the balance." The plaintiff, on the 20th October, replied, waiving some of the items objected to in the account, and sending a corrected statement, and stating in reference to the incandescent lamps that they made no charge for them in the original contract, and did not see why a rebate should be made; and

asking, if this settlement was satisfactory, for a remittance by the 1st of November.   On the 8th November the defendant replies, claiming that the incandescent lamps were not to go in without charge, and were a failure, but saying nothing further about any rebate on their account, and asked what the costs would be of a certain other kind of lamps in their place.   To this the plaintiff replied on the 11th November, giving the information asked for.   On the 21st November the defendant asked the plaintiff to send them by express a certain kind of screw, and two pair of brushes for their dynamo, saying nothing about the working of the plant or the incandescent lamps.   On November 22d the plaintiff again asked for pay, and on the 29th telegraphed that unless they received a check the next day they should draw at sight.   On the 30th November the defendant wrote plaintiff, acknowledging the receipt of the telegram, and saying in substance that the light did not come up to their requisites, had been getting worse and worse for the past two months, and they had decided not to spend any more money on it, and should not use it after that date.   No particular reference was made to the incandescent lamps. A few days after this the agent of plaintiff called on defendant, and, as he testifies, offered to put the thing in perfect working order at any expense, and the agent of the defendant replied that they did not want it put in order.   They thought perhaps there was something in the mill—some gases or something—that the lamps would not work.   That they did not want the machine at all; and declined to let him go on and put it in order.   After that, and on December 7th, the defendant wrote the plaintiff that, "if you desire to spend more money in trying to make the lights satisfactory we shall not stand in your way, but we will not bind ourselves to accept it even then, as we have been so very much disappointed in the working of it."   This action was commenced soon after.   On the 19th October, 1887, the defendant wrote that if the arc lights worked in the mill for the next 30 days as well as they had done they would waive the trouble of incandescent lighting in the offices, provided the plaintiff would make the requisite concession for the estimated cost of putting in the incandescent lights, and would then settle the account for the balance. There was evidence from which the jury would have had the right to say that the arc lights did for the next 30 days work as well as they had done, and that the matter of the concession referred to was arranged satisfactorily to defendant or waived.   If so, the continuance of the use by defendant after the expiration of the time for trial would amount to an acceptance.   *Concentrator Co.* v. *Caplice,* 55 N. Y. Super. Ct. 439; *Farmer Co.* v. *Taylor,* 69 Ill. 440; *Brown* v. *Foster,* 108 N. Y. 391, 15 N. E. Rep. 608.   In this view the question of acceptance should have been submitted to the jury.   *Corning* v. *Colt,* 5 Wend. 253.   The defendant used the plant until November 3d, and then, upon being pressed for payment, absolutely rejected it, and declined to allow the plaintiff to make any further efforts to satisfy the defendant.   The statement of the account rendered by plaintiff on the 20th October does not seem to have been objected to.   On the 21st November, and after the expiration of the 30 days, the defendant orders materials for the dynamo, which was part of the plant.   In the final rejection defendant made no reference to the incandescent lamps.   Under the contract as originally made the defendant was the party to be satisfied.   Some changes were afterwards made at the request of the defendant.   The plaintiff, as it may be inferred, was at considerable expense in putting the plant in.   The plaintiff was entitled to have the defendant, in the exercise of its option, act in good faith.   It had no right to reject for mere caprice.   *Singerly* v. *Thayer,* 108 Pa. St. 291, 2 Atl. Rep. 230; *Daggett* v. *Johnson,* 49 Vt. 345.   Whether in its final rejection the defendant acted in good faith was, under the circumstances of this case, a question of fact for the jury.   It follows that there should be a new trial.   Judgment reversed, and new trial ordered; costs to abide the event.   All concur.